# United States Court of Appeals
## For the First Circuit

Nos. 04-2601, 04-2602

PUERTO RICO TELEPHONE COMPANY, INC.,
as Liquidator on behalf of
Reliance Insurance Co. (in liquidation),

Plaintiff, Appellant/Cross-Appellee,

v.

U.S. PHONE MANUFACTURING CORPORATION,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., <u>Senior U.S. District Judge</u>]

Before
Torruella, Dyk[*], and Howard, <u>Circuit Judges</u>.

<u>Jesús E. Cuza</u>, with whom <u>Elliot H. Scherker</u>, <u>Pamela A. DeBooth</u>, and <u>Greenberg Traurig, P.A.</u>, were on brief, for appellant/cross-appellee Puerto Rico Telephone Company.
<u>Pedro Jiménez Rodriguez</u>, with whom <u>Adsuar Muñiz Goyco & Besosa, P.S.C.</u>, was on brief, for appellee/cross-appellant U.S. Phone Manufacturing Corporation.

October 14, 2005

[*]Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**.  Puerto Rico Telephone Company, Inc. ("PRTC") appeals from the district court's denial of its motion to vacate and entry of judgment confirming an arbitral award.  The award granted $2.5 million in damages to U.S. Phone Manufacturing Corp. ("USPhone") for breach of contract.  At issue is whether and how parties can contract for standards of judicial review of arbitration awards other than those set forth in the Federal Arbitration Act ("FAA" or "Act").  9 U.S.C. §§ 10, 11 (2000).

We hold that the judicial review provisions of the FAA can be displaced only by explicit contractual language evincing the parties' clear intent to subject the arbitration award to a different standard of review.  Here, no such clear statement was contained in the contract. Under the proper review standard set forth in the FAA there were no grounds for vacating the award. We accordingly affirm the district court.  On the cross-appeal by USPhone, we also affirm the district court's decision to deny an award of attorneys' fees to USPhone.

**I.**

The present dispute had its genesis in 1987, when PRTC solicited bids to procure telephones for its residential customers over a five-year period.  USPhone was awarded the bid, jointly with two other companies, on February 10, 1988.  On

-2-

December 2, 1988, PRTC and USPhone executed a requirements contract under which USPhone agreed to supply PRTC's five-year requirements of residential memory telephones, estimated at 25,000 per year ("the contract"). The contract was drafted by PRTC. Clause 4 of the contract, titled "Language and Law," contained a provision stating that "[t]his Contract shall be governed by and interpreted in accordance with the laws of the Commonwealth of Puerto Rico."[1] Clause 17, titled "Arbitration", stated, in pertinent part:

> 17.2 Arbitration Panel
>
> > If an attempt at settlement has failed, <u>the disputes shall be finally settled</u> under the Rules of Conciliation and Arbitration of the American Arbitration Association.
> > Each Party shall appoint a member to a three-person panel. The two members so appointed shall within twenty (20) days agree upon a third member who shall be a jurist and chair the panel. If the two members fail to appoint the third member within thirty (30) days, he will be appointed by the President of the American Arbitration Association. <u>The panel shall meet in Puerto Rico and apply the law of the Commonwealth of Puerto Rico.</u>
>
> 17.3 Judgment
>
> > The arbitral award shall be substantiated in writing and the findings <u>shall be final and</u>

---

[1]Clause 4 also stated "[t]his Contract is drawn up in the English language, which shall govern and shall be designated as the 'Ruling Language.'"

> binding for both parties. This arbitration procedure shall be a condition precedent to any right of legal action. The panel shall decide on the matter of costs of the arbitration.

During the course of performance, various disputes arose between the parties, which they were unable to resolve. The contract was eventually terminated by PRTC, pursuant to the contract's termination clause, effective January 2, 1993. On September 13, 1993, USPhone commenced arbitration against PRTC, before the American Arbitration Association ("AAA"). Three years later, following various procedural skirmishes regarding the choice of a neutral arbitrator, the United States District Court for the District of Puerto Rico ordered the parties to proceed to arbitration. U.S. Phone Mfg. Corp. v. P.R. Tel. Co., Civ. No. 96-1265CCC, slip op. at 5 (D.P.R. Sept. 30, 1996).

An AAA panel was convened in June 1997 and spent over two years considering the matter. More than a decade after the initial request for arbitration, on March 4, 2003, a unanimous panel awarded USPhone $2,552,123.99 in damages basing its decision on a record including "approximately 10 days of testimony . . . 1900 pages of transcripts, and approximately 175 exhibits, including physical evidence, as well as documents comprising approximately 1700 pages." As is common in arbitration awards, the arbitrators' decision contained no

discussion of the arbitrators' reasoning. See, e.g., Raytheon Co. v. Automated Bus. Sys., Inc., 882 F.2d 6, 8 (1st Cir. 1989).

On June 2, 2003, PRTC filed a motion to vacate the arbitration award in the United States District Court for the district of Puerto Rico. The motion did not challenge the arbitrability of any aspect of the controversy. However, PRTC claimed that the limited FAA standard of judicial review of awards was inapplicable and that the contract provided for judicial review of all errors of law in the arbitration award. The motion alleged "various errors in the structure of the arbitration, the procedures of the arbitration, and the ultimate findings of the arbitration." P.R. Tel. Co. v. U.S. Phone Mfg. Corp., Nos. 03-1593, 03-1815, slip op. at 1 (D.P.R. Mar. 9, 2004). The case was consolidated with an earlier action brought by USPhone in the Southern District of New York for confirmation of the award pursuant to the FAA.

The district court denied PRTC's motion to vacate, holding that the FAA review standards applied. The district court concluded that under the FAA standard, judicial review of arbitral awards is "only allowed in cases of corruption, serious error, misconduct, and miscalculation," and that "district courts do not have the luxury 'to hear claims of factual or legal error

-5-

by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" Id., slip op. at 2 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

The district court found that PRTC's challenge to the award did "not rise to anywhere near the level required under the Federal Arbitration Act in order to allow court review ... [and] that PRTC's objections to the arbitration are essentially disagreements with the arbitrators' conclusions." Id., slip op. at 3. In denying PRTC's motion, the court further observed that "[t]he mere filing of this motion controverts the purpose of the Federal Arbitration Act and is a waste of the time and resources of this Court." Id., slip op. at 4. Subsequently, the court granted USPhone's motion to amend the judgment, nunc pro tunc, to reflect confirmation of the award. In this same order, the court denied U.S. Phone's request for attorneys' fees but granted pre-judgment and post-judgment interest on the award. P.R. Tel. Co. v. U.S. Phone Mfg. Corp., Nos. 03-1593, 03-1815, slip op. at 2-3 (D.P.R. Oct. 6, 2004).

PRTC appeals the denial of its motion to vacate and the judgment confirming the award. USPhone cross-appeals the denial of attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court decision upholding

-6-

the arbitration award under "ordinary, not special, standards."

First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 948 (1995).[2]

## II.  The Appropriate Standard of Judicial Review

On appeal, the parties agree that this contract is governed by the FAA.  They also agree that the FAA provides for very limited review of an arbitration award.  Section 10 permits courts to vacate an award only:

> (1) Where the award was procured by corruption, fraud, or undue means.

---

[2] USPhone argues that PRTC's motion to vacate the arbitration award was untimely.  Section 12 of the FAA provides: "Notice of a motion to vacate ... an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12 (2000).  The FAA requires service on nonresidents "in like manner as other process of the court" and refers to Rule 4 of the Federal Rules of Civil Procedure.  Wright & Miller,  4A Fed. Prac. & Proc. Civ. 3d § 1101 (2002).  Here, PRTC served its motion to vacate on USPhone and its counsel by mail at least four times prior to the deadline, and was able to effect personal service on USPhone on June 5, 2003, one day after the deadline.

We need not decide whether mail service complied with Rule 4 in these circumstances, for  courts have held that a failure to comply with Rule 4 (for example, by serving only the defendant's attorney) may be excused if notice actually is received. Id. USPhone does not deny receipt of actual notice during the three month window, nor allege any significant prejudice.  The district court was within its discretion to excuse the one-day delay. See Piccolo v. Dain, Kalman & Quail, Inc., 641 F.2d 598, 601 (8th Cir. 1981) (recognizing a "due diligence" exception to the three-month limit); see also Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Comm., Purchase Directorate 360 F.2d 103, 107-08 (2nd Cir. 1966); Matter of Arbitration between InterCarbon Bermuda, Ltd. and Caltex Trading and Transp. Corp., 146 F.R.D. 64, 71 (S.D.N.Y. 1993).

-7-

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (2000).[3] Thus, the statute "carefully limits judicial intervention to instances where the arbitration has been tainted in certain specific ways ... [and] contains no express ground upon which an award can be overturned because it rests on garden-variety factual or legal [errors]." Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990). Under the FAA, an award may be vacated for legal error only when in "manifest disregard of the law." Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35-36 (1st Cir. 2001).

However, PRTC contends that the parties contracted for more rigorous review of arbitration awards than that provided for by the FAA. In particular, PRTC asserts that the contract, by

---

[3] Section 11, not relevant here, provides the district court with authority to "make an order modifying or correcting" an arbitration award in cases of "evident material miscalculation of figures or an evident material mistake ...[;] [w]here the arbitrators have awarded upon a matter not submitted to them ...[;] [or] [w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11 (2000).

-8-

adopting Puerto Rican law and by providing that the "contract shall be governed by and interpreted in accordance with the laws of the Commonwealth of Puerto Rico" (language which they claim, under Puerto Rican law, requires review of the award for legal errors), demonstrates that the parties agreed to judicial review of the award for errors of law. Resolution of this question requires examination of the FAA and case law interpreting it.

## A. Background and Purpose of the FAA

The FAA was enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. The Act's "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995) (FAA's purpose was to "overcome courts' refusals to enforce agreements to arbitrate"). The FAA broadly provides that written agreements to arbitrate "involving commerce ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2000).

Under the Act, federal courts may, inter alia, stay litigation on issues that are within the scope of the arbitration agreement, 9 U.S.C. § 3; compel parties to submit to arbitration, 9 U.S.C. § 4; appoint neutral arbitrators, 9 U.S.C. § 5; compel appearances of witnesses at arbitration hearings, 9 U.S.C. § 7; confirm arbitration awards and enter judgment accordingly; 9 U.S.C. § 9; and, as discussed above, in very limited circumstances, vacate, modify, or correct arbitration awards, 9 U.S.C. §§ 10 & 11.

In light of the FAA's explicit purpose to override state law that impedes the enforceability of arbitration agreements, it is well established that the provisions of the FAA will prevail over contrary state-law rules. The "broad principle of enforceability" of arbitration agreements embodied in the Act is not subject "to any additional limitations under state law." Southland Corp. v. Keating, 465 U.S. 1, 11 (1984). The Supreme Court has repeatedly enforced the federal policy favoring arbitration where the controversy concerns the scope of the arbitration clause itself.

For example, in Perry v. Thomas, the Court held that disputes over commissions on securities sales were arbitrable under a contract that provided for arbitration, even though the California Labor Code mandated court litigation of such "wage"

-10-

disputes, "despite the existence of an agreement to arbitrate." 482 U.S. 483, 486, 490-91 (1986). This was because section 2 of the FAA "embodies a clear federal policy of requiring arbitration" where there is an enforceable agreement to arbitrate. Id. at 489. Similarly, in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., the Court held that the parties' antitrust claims were arbitrable, notwitstanding Puerto Rican law requiring judicial resolution. 473 U.S. 614, 623 n.10 (1985).

The Court has also held that the federal policy favoring arbitration and reflected in the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). This is so "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 25; See also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967) (holding that notwithstanding a contrary state rule, consideration of a claim of fraud in the inducement of a contract "is for the arbitrators and not for the courts"); Volt

Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 475-76 (1989).

A difficulty has arisen, however, when another important policy in the FAA has been implicated – namely the federal policy of allowing the parties to craft their own agreements. Passage of the FAA "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985). The general rule is that arbitration agreements are to be enforced according to their terms. Volt, 489 U.S. at 479; Prima Paint, 388 U.S. at 404 n.12.

These two policies contained within the FAA – the policy favoring arbitral resolution of disputes notwithstanding state law to the contrary, and the policy favoring enforcement of arbitration agreements according to general contract principles – are potentially in conflict in two situations. First, choice-of-law provisions in arbitration contracts (providing that the contract will be governed by the law of a particular state) have been argued to evidence the parties' desire that arbitration be conducted pursuant to state law. Second, even where federal law governs, where an arbitration agreement adopts a particular arbitration rule that departs from the FAA standard (either a state-law rule or one created for the particular agreement),

there is an argument that the agreement should be enforced according to its terms, and that the specific rule chosen by the parties should prevail over the FAA standard. Here, we must first determine whether state or federal law applies to the standard of review issue and then determine if the federal standard of the FAA has been displaced.

## B.  Effect of the Choice-of-Law Clause

We consider first the choice-of-law argument. PRTC argues that by incorporating Puerto Rican law the parties agreed that the Puerto Rican law of judicial review of arbitration awards should apply. The Supreme Court has considered the choice-of-law issue in the Volt and Mastrobuono cases, and appears to have instructed us that the outcome should depend on whether there is a significant FAA policy that would be undermined by the state rule.

Mastrobuono involved a policy central to the FAA: the allocation of powers between the court and the arbitrators. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59-60 (1995). The Court held that a choice-of-law provision could not be interpreted to substitute state for federal law. Id. at 58-61. The petitioners in Mastrobuono were unsophisticated investors who had opened a securities trading account with a

-13-

large brokerage firm. Id. at 54. The contract, drafted in full by the brokerage firm, contained an arbitration clause providing for arbitration in accordance with the National Association of Securities Dealers ("NASD") rules. These rules allowed an award of punitive damages. Id. at 60-61. The contract also included a choice-of-law clause stating that the contract was to be governed by New York law. Id. at 54-55. New York law prohibited arbitrators from awarding punitive damages. Id. at 55.

In light of the federal policy favoring arbitration, the Court concluded that the "best way to harmonize the choice-of-law provision with the arbitration provision [was] to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration." Id. at 63-64 (emphasis added). In other words, a choice-of-law clause, standing alone, generally will not be interpreted to require the application of state law restricting "the authority of arbitrators."

Volt, on the other hand, held that a choice-of-law provision could properly be interpreted by the state court to provide for application of California law as to the relative

-14-

timing of judicial and arbitration proceedings. 489 U.S. at 479. There, the contract provided that "[t]he contract shall be governed by the law of the place where the Project is located," that is, California. Id. at 470 (modification in original). California law provided that an arbitration should be stayed pending related litigation by one of the parties to the arbitration agreement with parties not bound by the arbitration agreement. There was no provision of the FAA either requiring a stay of arbitration in such circumstances or prohibiting a stay.[4] The Supreme Court, deferring to the state court's interpretation of the contract, found that the federal policy favoring

---

[4]     Section 3 of the FAA states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2000). This provision has been interpreted to require a stay of litigation between the parties to the arbitration agreement when the subject of the litigation is within the scope of the agreement. See e.g., Moses H. Cone, 460 U.S. at 22, 22 n.27. Section 3 does not directly address the issue of stays of litigation involving non-parties. Other courts have broadly interpreted section 3 -- in combination with the district court's inherent power to manage its own docket -- to authorize the district court to issue a stay of litigation involving non-parties. See, e.g., City of Bismarck v. Toltz, King, Duvall, 767 F.2d 429, 432-33 (8th Cir. 1985).

-15-

arbitration was not offended by application of California's laws because, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules." Volt, 489 U.S. at 476. More recently, the Court has clarified that the proper inquiry is whether the state law requirement "undermine[s] the goals and policies of the FAA," Doctor's Assocs. v. Cassaroto, 517 U.S. 681, 685 (1996) (internal quotation marks omitted), and explained that "[t]he state rule examined in Volt determined only the efficient order of proceedings." Id. at 688 (emphasis added). Thus, Volt establishes that application of state law rules is appropriate only when there is no conflicting federal policy.

We conclude that this case is closer to Mastrobuono than to Volt, because here, the policies of the FAA are implicated. Here, PRTC argues that the choice-of-law provision requires us to apply Puerto Rican law to determine whether the contract requires more searching judicial review of the arbitration award than that provided for in the FAA. The extremely limited judicial review contemplated by the FAA clearly implicates the federal policy favoring final resolution of disputes by arbitration and, in particular, affects the allocation of powers between the court and the arbitrators. Mastrobuono, 514 U.S. at 59-60. Allowing more searching judicial review would inherently limit the authority of arbitrators.

-16-

Jacada Ltd. v. Intern. Mktg. Strategies, 401 F.3d 701, 711 (6th Cir. 2005); see also Bowen v. Amoco Pipeline Co., 254 F.3d 925, 936 (10th Cir. 2001) ("[E]xpanded judicial review would threaten the independence of arbitration ... and reduces arbitrors' willingness to create particularized solutions for fear the decision will be vacated by a reviewing court.").

In light of this policy, the mere inclusion of a generic choice-of-law clause within the arbitration agreement is not sufficient to require the application of state law concerning the scope of review, since there is a strong federal policy requiring limited review. This is particularly so when the state law at issue is "specifically and solely applicable to arbitration agreements." Painewebber Inc. v. Elahi, 87 F.3d 589, 593 (1st Cir. 1996). Just as the generic choice-of-law clause in Mastrobuono was insufficient to invoke New York law precluding arbitrators' awards of punitive damages, a "generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime" for vacatur of arbitral awards. Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 289, 297 (3rd Cir. 2001).

Our conclusion in this respect is in keeping with the decisions of every circuit that has considered the question.

-17-

These other circuits have held that the mere inclusion of a choice-of-law clause within the arbitration agreement is insufficient to indicate the parties' intent to contract for the application of state law concerning judicial review of awards.[5]

Thus, here the choice-of-law provision in Clause 4 of the contract is insufficient to render applicable Puerto Rican law concerning the scope of judicial review.

---

[5] See, e.g., Jacada, 401 F.3d at 711-12 (holding that generic choice-of-law provision did "not unequivocally suggest an intent to displace the default federal standard"); Roadway, 257 F.3d at 289; UHC Mgmt. Co. v. Computer Scis. Corp., 148 F.3d 992, 997 (8th Cir. 1998) (finding choice-of-law provision insufficient to invoke state law providing for more searching judicial review; "we will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear").

Our holding is also consistent with the decisions of this circuit and others that have found a generic choice-of-law provision insufficient to incorporate state law on the allocation of powers between the court and the arbitrator. See, e.g., Elahi, 87 F.3d at 593 (following Mastrobuono to "find that the choice-of law clause in this case is not an expression of intent to adopt New York caselaw requiring the courts to apply section 15 [the NASD time bar on arbitration]"); Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 327 (2d Cir. 2004) ("[T]his Court has rejected the argument that a general choice-of-law provision without more evidences the parties intent to incorporate New York decisional law on the allocation of powers between the court and the arbitrator.")(internal quotation marks and citations omitted); Ferro Corp. v. Garrison Indus., Inc. 142 F.3d 926, 937 (6th Cir. 1998) (holding choice-of-law clause was "not an unequivocal inclusion" of the Ohio arbitration rule that courts, not arbitrators decide the issue of fraudulent inducement of the agreement to arbitrate) (internal quotation marks omitted); Porter Hayden Co. v. Century Indem. Co., 136 F.3d 380, 382-84 (4th Cir. 1998) (finding general choice-of-law provision insufficient to require application of Maryland arbitration law and that timeliness defenses should therefore be submitted to arbitration).

## C.  Effect of Other Provisions

PRTC argues, however, that, even applying federal law, the contract should be read as evidencing an explicit decision to provide for more searching judicial review.  Specifically, it urges that the language of Clause 4 of the contract is not merely a choice-of-law clause because it provides that "[t]his Contract shall be governed by and interpreted in accordance with the laws of the Commonwealth of Puerto Rico."  Under Puerto Rican law, if the parties' arbitration agreement specifies that the award should be "conformable to law" ("conforme al derecho"), then the award will be reviewed for legal error.  See, e.g., Unión de la Industria Licorera de Ponce v. Destilería Serrallés. Inc., 116 P.R. Offic. Trans. 426, 432 (P.R. 1985); S.I. U. De Puerto Rico v. Otis Elevator Co., 105 P.R. Offic. Trans. 1156, 1163 (P.R. 1977); see also Febus v. MARPE, 135 D.P.R. 206 (1994). PRTC argues that the "in accordance with the laws" language demonstrates an intent to subject the arbitrators' award to review for errors of law.  USPhone, on the other hand,  urges the language here is insufficient under Puerto Rican law to invoke review for legal error, and that the contract itself explicitly provides that the findings of the arbitrator "shall be final and binding for both parties," thus precluding more searching review.

-19-

We need not decide whether as a matter of local law this contract would be construed as providing for review of legal error, for we conclude that the FAA creates a presumption that the more limited FAA standard will govern, and the language here, as a matter of federal law, is insufficient to overcome the presumption.

The issue whether the parties by contract can supplant the FAA standard of review has generated substantial litigation. Some circuits that have held that parties can never by contract agree to a different standard of review, holding that "because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision ... private parties may not contractually impose their own standard on the courts." Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003) (en banc); Bowen, 254 F.3d at 935.[6]

These cases construe the FAA to preclude such a contractual provision on the theory that allowing private parties to contract for more searching review standards would create

_____

[6]     The Eighth Circuit has also suggested that it would not allow parties to contract for expanded judicial review, although it did not finally decide the issue, finding the contract language at issue insufficient to indicate the parties' intent to do so. See UHC Mgmt. Co., 148 F.3d at 996-97.  The Seventh Circuit, in a decision construing section 301 of the Taft-Hartley Act but "looking to" the FAA for guidance has also suggested that parties cannot contract for vacatur standards other than those set forth in the FAA. Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc., 935 F.2d 1501, 1504-05 (7th Cir. 1991).

federal jurisdiction by contract. <u>Kyocera</u>, 341 F.3d at 999 (citing <u>Chi. Typographical Union</u>, 935 F.2d at 1504-05). This concern seems to us misplaced, as it is well settled that federal courts have jurisdiction over suits seeking to compel arbitration (or to vacate or enforce arbitration awards) only if the parties are of diverse citizenship, or some separate grant of jurisdiction applies.[7] Modifying the review standard does not expand federal jurisdiction.

These decisions also rest on a policy concern that "[b]road judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." <u>Kyocera</u>, 341 F.3d at 998; <u>accord</u> <u>Bowen</u>, 254 F.3d at 935. These cases invoke the goal of preserving the "independence of the arbitration process," <u>Bowen</u>, 254 F.3d at 935, or, put otherwise, the independence of the arbitrators.

However, the Supreme Court has emphasized on more than one occasion that the principal objective behind the passage of

---

[7]     The FAA is "something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under [28 U.S.C. § 1331 (2000)] or otherwise." <u>Moses H. Cone</u>, 460 U.S. at 25 n.32.

-21-

the FAA was enforcement of the parties' agreements, and that efficient dispute resolution should not be favored over the FAA's primary goal of enforcing private agreements to arbitrate, given Congress's "preeminent concern in passing the Act ... to enforce private agreements." Dean Witter Reynolds, 470 U.S. at 221; see also Moses H. Cone, 460 U.S. at 20 (FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis omitted).

Other circuits have held that the parties may contract to displace the FAA standards. See, e.g., Jacada, 401 F.3d a Roadway, 257 F.3d at 288-89; Gateway Techs., Inc. v. MCI, 64 F.3d 993, 996-97 (5th Cir. 1995). These courts have held that the Act's ultimate purpose is to enforce the terms of the agreement to arbitrate, and that they are therefore bound by federal law to enforce the arbitration agreements as drafted. See, e.g., Roadway, 257 F.3d at 292. At the same time they have recognized that the federal policy in favor of recognizing broad authority of the arbitrators, even if not sufficient to override the parties' agreement for more searching review, at least requires a presumption that the FAA standard will apply. Id. at 294. Thus, in the few cases where courts have found that the parties contracted for more searching judicial review of arbitral awards, there has been explicit contractual language that specified the

precise nature of the intended judicial review.  See, e.g., Gateway Techs., 64 F.3d at 996 (contract language stated that "[t]he arbitration decision shall be final and binding on both parties, except that <u>errors of law shall be subject to appeal</u>")(emphasis and modification in original); <u>Harris</u> v. <u>Parker Coll. of Chiropractic</u>, 286 F.3d 790, 793-94 (5th Cir. 2002) (contract expressly provided that "each party shall retain his right to appeal any questions of law").

We agree with the other circuits that have concluded that the parties can by contract displace the FAA standard of review, but that displacement can be achieved only by clear contractual language.  The contract here, even if sufficient under Puerto Rican law, is far short of the explicit language required by federal law to displace the FAA standard of review, particularly in light of the agreement's language that any disputes "shall be finally settled" under the AAA Rules.  <u>See</u> <u>Elahi</u>, 87 F.3d at 594.  We conclude that the FAA standard applies.

### III.  Interpreting the Governing Standard

PRTC contends that, even applying the federal standard, the award should be set aside.  As we noted earlier, under the FAA itself, "judicial review of arbitration awards is

-23-

available where arbitrators have acted in manifest disregard of the law." Prudential-Bache Secs., Inc. v. Tanner, 72 F.3d 234, 239 (1st Cir. 1995) (citing Wilko v. Swan, 346 U.S. 427, 436-37 (1953)). Thus, "a mere mistake of law by an arbitrator cannot serve as the basis for judicial review." Id. at 239 n.6. Rather, "manifest disregard" means that "arbitrators knew the law and explicitly disregarded it." Advest, 914 F.2d at 10. Vacatur is appropriate under the manifest disregard standard only when the award is "'unfounded in reason and fact, ... based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling, or is mistakenly based on a crucial assumption which is decidedly a non-fact.'" Challenger Caribbean Corp. v. Unión General de Trabajadores, 903 F.2d 857, 861 (1st Cir. 1990) (quoting In re Hotel Da Vinci, 797 f.2d 33, 34 (1st Cir. 1986)). Put differently, "disregard implies that the arbitrators appreciated the existence of a governing legal rule but wilfully decided not to apply it. As arbitrators need not explain their award, and did not do so here, it is no wonder that appellant is hard pressed to satisfy the exacting criteria for invocation of the doctrine." Advest, 914 F.2d at 10 (internal quotation marks and citations omitted).[8]

---

[8] "'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator made a serious mistake or committed grevious error will not furnish a satisfactory

-24-

This standard has not remotely been satisfied here. PRTC contends that the arbitrators failed to recognize various breaches of cardinal contractual obligations by USPhone that provided a defense to USPhone's claims for breach of contract. Thus, for example, USPhone allegedly violated the contract by failing to comply with applicable FCC requirements. PRTC's argument that the district court failed to review the arbitration award under the "manifest disregard of the law standard" is nothing more than a thinly veiled attempt to obtain appellate review of the arbitrators' legal and factual determinations regarding the contract dispute. The district court properly rejected PRTC's claim, finding that "PRTC's objections to the arbitration are essentially disagreements with the arbitrators' conclusions." P.R. Tel., Nos. 03-1593, 03-1815, slip op. at 3.

## IV. Attorneys' Fees

In its cross-appeal, USPhone contends that the district court erred in refusing to award attorneys' fees, in light of various observations made by the district court when dismissing with PRTC's motion with prejudice.[9] Our review of the

basis for undoing the decision," under the manifest disregard standard. Advest, 914 F.2d at 9 (quoting Misco, 484 U.S. at 371).

[9]     Specifically, USPhone cites to the following language from the district court's Opinion and Order:
    The Court finds that the basis for review stated by PRTC in this case does not rise to anywhere near the level

-25-

district court's denial of attorney fees is for abuse of discretion. <u>Top Entm't, Inc.</u> v. <u>Torrejon</u>, 351 F.3d 531, 533 (1st Cir. 2003).

Puerto Rican law, which governs the question of fees in this diversity action, see <u>Newell P.R., Ltd.</u> v. <u>Rubbermaid Inc.</u>, 20 F.3d 15, 24 (1st Cir. 1994), provides that "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct."  P.R. R. Civ. P. 44.1(d). Puerto Rican law thus provides that an award of fees shall be made for either (1) obstinate conduct or (2) frivolous litigation.  There is no basis for USPhone's contention that federal law requires a more liberal standard for the award of attorney's fees in suits seeking to set aside arbitration awards.[10]

---

required under the Federal Arbitration Act in order to allow court review.  The Court finds that PRTC's objections to the arbitration are essentially disagreements with the arbitrators' conclusions.  This type of disagreement cannot form the basis of a legitimate motion to vacate an arbitration award because it would subvert the very purpose of arbitration. ... The mere filing of this motion controverts the purpose of the Federal Arbitration Act and is a waste of the time and resources of this Court."
<u>P.R. Tel.</u>, Nos. 03-1593, 03-1815, slip op. at 3-4.

[10]    The case relied upon by USPhone, <u>Courier-Citizen Co.</u> v. <u>Boston Electrotypers Union No. 11</u>, 702 F.2d 273, 282 (1st Cir.

-26-

Under Rule 44.1(d), "a finding of obstinacy requires that the court determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991). Factual findings of specific instances of misconduct, taking into account the overall character of the litigation, are required to support a finding of obstinacy mandating the award of attorney fees under Puerto Rican law. See, e.g., Mejias-Quiros v. Maxxam Prop. Corp., 108 F.3d 425, 429 (1st Cir. 1997); Dopp v. Pritzker, 38 F.3d 1239, 1253-54 (1st Cir. 1994). "Examples of obstinate conduct include: denying all liability in answering a complaint, where the defendant later admits liability; raising inapplicable defenses; denying all liability when only the amount of damages sought is contested; and denying a fact, knowing it is true." Correa v. Cruisers, a Div. Of KCS Int'l, Inc., 298 F.3d, 13, 31 (1st Cir. 2002) (citation omitted). The district court here made no such explicit factual finding, nor does the record otherwise document

1983), involved an arbitration award enforceable under section 301(b) of the Labor Management Relations Act, codified at 29 U.S.C. § 185(b).

specific instances of obstinate conduct.  <u>Compare</u> <u>Top Entm't</u>, 351 F.3d at 534.

The district court also did not conclude that the motion to vacate was frivolous, although the court did observe that PRTC's filing of its motion was "a waste of time and resources of this court."  Moreover, a finding of frivolity would not be justified in this case.  The district court acted within its discretion in denying USPhone's motion for the award of fees.

**V.**

In sum, we hold that the parties did not by contract displace the FAA standard of review and, under the FAA standard, the district court properly denied the motion to vacate and confirmed the arbitration award.  The district court also did not err in denying U.S. Phone's motion for attorney fees. Accordingly, we <u>affirm</u> the district court's judgment.

<u>It is so ordered</u>.