BESOSA, District Judge.
Before the Court is petitioners Luis Moyett ("Moyett"), Ludida PR, Inc. ("Ludida"), and DDL Jerico SE ("Jerico")'s motion to enforce subpoenas issued to respondents David Lugo-Sánchez ("Lugo") and Miguel Ferrer-Bolívar ("Ferrer") by the Financial Industry Regulatory Authority ("FINRA") arbitration panel in the matter of Luis Moyett v. UBS Fin. Servs., Inc., FINRA Case No. 15-1833. (Docket No. 1.) For the reasons set forth below, *265 the petitioners' motion to enforce the arbitral subpoenas is GRANTED .
I. Background
UBS Financial Services Incorporated and UBS Financial Services Incorporated of Puerto Rico (collectively, "UBS") provided financial consulting services to the petitioners. (Docket No. 1, Ex. 2.) The petitioners and UBS agreed that "any claim or issue in any controversy which may arise between [the petitioners] and [UBS] ... shall be determined by arbitration." (Docket No. 11, Ex. 1 at p. 9.) Furthermore, the petitioners and UBS stipulated that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. , would govern any arbitration arising between them. Id.
On July 21, 2005 Moyett, Ludida, and Jerico commenced a FINRA arbitration action against UBS. (Docket No. 1, Ex. 1 at p. 1; see FINRA Case No. 15-1833.) FINRA appointed a three-member panel to adjudicate petitioners' claims against UBS. (Docket No. 1, Ex. 1 at pp. 2-3.) The FINRA arbitrators issued Lugo and Ferrer subpoenas to testify before the panel on July 9, 2018 and July 30, 2018, respectively. (Docket No. 1, Exs. 10 and 11.)[1] The subpoena directs Lugo and Ferrer to appear at the El Telégrafo Building, 1314 Ponce de León in San Juan, Puerto Rico. Id. [2] Counsel for Lugo and Ferrer informed the petitioners that their clients intend to disregard the subpoenas. (Docket No. 1, Ex. 1 at p. 3.) The petitioners request that the Court compel Lugo and Ferrer to comply with the subpoenas. (Docket No. 1.) Ferrer, however, maintains that this Court lacks jurisdiction to enforce the arbitral subpoenas, and that testifying before the arbitration panel is unduly burdensome. (Docket No. 3 at p. 2.)[3] Ferrer's arguments are unavailing.
II. The FAA Grants the Court Jurisdiction to Enforce the Arbitral Subpoenas
In opposing the petitioners' motion, Ferrer argues that this Court lacks jurisdiction to enforce FINRA-issued subpoenas. (Docket No. 3.) The FAA establishes the validity and enforceability of *266 written arbitration agreements. See Torres-Rosario v. Marriot Int'l, 872 F. Supp. 2d 149 (D.P.R. 2012) (Besosa, J.).[4] According to section 7 of the FAA, arbitrators may summon any person to appear before them as a witness. 9 U.S.C. § 7. Section 7 provides that:
If any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment of neglect or refusal to attend the court of the United States.
Id. (emphasis added); see Sec. Life Ins. Co. of Am. Duncanson & Holt, Inc., No. 99-799, 1999 U.S. Dist. LEXIS 23385, at *8 (D. Minn. July 1, 1999) (compelling a non-party to comply with the arbitrators' subpoena duces tecum because the court had "the power to enforce the arbitrators subpoena" pursuant to the FAA).
Ferrer grounds his opposition on a false premise, asserting that the arbitrators are "sitting" in the Northern District of Georgia. (Docket No. 3 at p. 7.) Because the arbitrators sit in the Northern District of Georgia, Ferrer argues, only the United States District Court for the Northern District of Georgia may compel Ferrer to comply with the arbitral subpoena. Id. The Court disagrees.
Ferrer posits that the physical location of the arbitrators dictates the location of the arbitration hearing. Id. In their respective arbitrator disclosure reports, each panel member revealed that they reside within the Northern District of Georgia. (Docket No. 1, Ex. 4 at pp. 1, 5 and 9.) Without citing to the record, Ferrer states that "the arbitrators would be physically located and presumably hear Mr. Ferrer's proposed testimony via video conference." (Docket No. 3 at p. 8.) Ferrer's motion is devoid of any authority standing for the proposition that the geographic location of the arbitrators govern which court may enforce subpoenas issued pursuant to section 7 of the FAA.[5]
The Court's analysis commences with the arbitration agreement between the petitioners and UBS. See Hopkinton Drug, Inc., v. CaremakerPCS, LLC, 77 F.Supp.3d 237, 250 (D. Mass. 2015) (holding that "[a]s a starting premise, arbitration clauses are interpreted pursuant to normal contract interpretation standards") (citation omitted). The arbitration agreement is silent regarding the location of the arbitrators' seat, stating only that any arbitration "shall be governed by the rules of the organization convening the panel." (Docket No. 11, Ex. 1 at p. 9.)
According to FINRA Code of Arbitration Rule 12213, the "[FINRA] Director will select the hearing location closest to the customer's residence at the time of the *267 events giving rise to the dispute."[6] The petitioners reside in Puerto Rico, and the events underlying the FINRA claim occurred in Puerto Rico. See Docket No. 1, Ex. 1 at p. 3 ("At all times relevant and material thereto, UBS-PR conducted business with the Claimants though its Puerto Rico office."). The Court is compelled to conclude that the arbitrators are sitting in Puerto Rico for purposes of the July 2018 hearings. This conclusion is consistent with the terms of the arbitration agreement between petitioners and UBS. Indeed, that the arbitrators reside in the continental United States does not preclude them from "sitting" in Puerto Rico for the arbitration hearing. The arbitrators ordered Lugo and Ferrer "to appear before" them to "give testimony," instructing Lugo and Ferrer to appear at the El Telégrafo building in San Juan, Puerto Rico. (Docket No. 1, Exs. 10 & 11.) Despite the physical distance between the arbitrators, who may physically be in Georgia, and the FINRA litigants, who are in Puerto Rico, the arbitrators "sit" in Puerto Rico with the aid of videoconferencing technology. Indeed, FINRA allows for the submission of testimony via videoconference. (Docket No. 9 at p. 2.)[7]
Because the arbitrators sit in Puerto Rico for the purpose of the 2018 hearings, the Court possesses the authority to enforce the arbitral subpoenas pursuant to section 7 of the FAA.[8]
III. Ferrer Failed to Demonstrate Undue Hardship
Ferrer asserts that the arbitral subpoena subjects him to undue burden and harassment. (Docket No. 3 at p. 10.) According to Ferrer, medical procedures and treatments scheduled "from early July through mid-August 2018" preclude his appearance at the arbitration hearing. Id. Also, Ferrer "intend[s] to travel to Europe in August 2018." (Docket No. 3, Ex. 1 at p. 2.)
The impediments cited by Ferrer are scheduling conflicts, not harassment. Pursuant to section 7, this Court may enforce compliance with arbitral subpoenas "in the same manner provided by law for securing the attendance of witnesses ... in the court of the United States." 9 U.S.C. § 7. The Court must quash or modify subpoenas that "subject a person to undue burden" pursuant to Federal Rule of Civil Procedure 45 (" Rule 45"). Fed. R. Civ. P. 45(d)(3). To prevail on his motion to quash the arbitral subpoena, Ferrer must demonstrate a "clearly defined and serious injury." In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D. Pa. 2014) (quotation omitted). The arbitral subpoena requests that Ferrer testify at the July 30, 2018 hearing. (Docket No. 11, Ex. 11.) Ferrer need only allocate one day to comply with the subpoena. Nothing in Ferrer's opposition suggests that his medical or business commitments prevent him from attending the hearing on July 30, 2018.
IV. Conclusion
For the reasons set forth above, Moyett, Ludida, and Jerico's motion to enforce compliance with the arbitral subpoenas is *268 GRANTED . (Docket No. 1.) The Court ORDERS Lugo to appear at the July 9, 2018 arbitration hearing, and ORDERS Ferrer to appear at the July 30, 2018 arbitration hearing.
IT IS SO ORDERED.

The petitioners state that Ferrer's subpoena requests that he appear at the "July 29, 2018" arbitration hearing. (Docket No. 1 at p. 1.) The subpoena, however, orders Ferrer to "give testimony in the above-captioned matter on July 30, 2018." (Docket No. 1, Ex. 11.) The Court construes the petitioner's reference to July 29, 2018 as a typographical error, and instead relies on the date set forth in the subpoena.

Pursuant FINRA Code of Arbitration Rule 12512, "[a]britrators shall have the authority to issue subpoenas for the production of documents or the appearance of witnesses." See FINRA Code of Arbitration Rule 12512, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4166 (last visited June 26, 2018).

Lugo did not oppose the petitioner's motion to enforce the arbitral subpoenas. The Court notes that FINRA provides a procedural framework for non-parties, such as Lugo and Ferrer, to oppose subpoenas issued in relation to an arbitration hearing. According to FINRA Code of Arbitration Rule 12512(e):
If a non-party receiving a subpoena objects to the scope or propriety of the subpoena, the non-party may, within 10 calendar days of service of the subpoena, file written objections with the Director ... The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. The party must serve the response on the non-party and file proof of service with the Director pursuant to Rule 12300 (c)(5). After considering all objections, the arbitrator responsible for issuing the subpoena shall rule promptly on the objections.
See FINRA Code of Arbitration Rule 12512, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4166 (last visited June 26, 2018).

The FAA is "something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." P.R. Tel. Co. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 31 n.7 (1st Cir. 2005) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ).

The arbitrator disclosure reports are accurate "through 02/04/2016." (Docket No. 1, Ex. 4 at pp. 1, 5 & 9.) The Court has no information regarding the current location of the arbitrators' domicile, or whether any arbitrator will be in Puerto Rico during the arbitration hearing.

FINRA Code of Arbitration Rule 12213, available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4119 (last visited June 26, 2018).

The petitioners cite to FINRA's website. "Videoconferencing Available in FINRA Regional Offices," available at https://www.finra.org/arbitration-and-mediation/videoconferencing-available-finra-regional-offices (last visited May 26, 2018).

The Court's determination pertains only to the location of the arbitrators' seat for the July 2018 hearings.