Manuel L. Miró, recurrente, *v.* Comisión Industrial de Puerto Rico, compuesta por M. León Parra, Presidente y F. Paz Granela y Juan M. Herrero, Comisionados Asociados, demandada, y Ramón Montaner, Administrador del Fondo del Seguro del Estado, recurridos.

Núm. 198.—*Sometido:* Mayo 20, 1940. *Resuelto:* Junio 10, 1940.

*G. Benítez Gautier* y *Jorge Benítez Gautier,* abogados del recurrente; *M. León Parra,* abogado de la Comisión; *Hon. Procurador General George A. Malcolm, Emilio de Aldrey, Procurador General Auxiliar* y *Víctor J. Vidal González,* Asesor Legal éste del Fondo del Estado, abogados del Administrador recurrido.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Los hechos de este caso aparecen expuestos en *Montaner, Administrador,* v. *Comisión Industrial,* 54 D.P.R. 561, y en *Miró* v. *Comisión Industrial,* 56 D.P.R. 127. De esos casos copiamos a continuación los párrafos que consideramos pertinentes a la resolución del presente recurso:

"A fin de preparar su proposición para un contrato titulado 'Mejoras al Sistema de Distribución del Acueducto de Ponce,' Manuel L. Miró consultó al Administrador del Fondo del Seguro del Estado respecto a la clasificación y prima de seguro que se aplicarían a tal proyecto bajo la Ley de Indemnizaciones a Obreros. Se le informó que el tipo sería el correspondiente a la clasificación núm. 7520, o sea $1.68 por cada $100 de sueldos pagados. Se adjudicó el contrato al contratista y en abril 26, 1937, éste obtuvo la póliza núm. 8708 bajo el tipo y clasificación mencionados.

"En mayo 19 de 1937 el Administrador del Fondo del Estado notificó a Miró que se había cometido un error en la expedición de la póliza y que la misma tendría que ser cancelada o alterada para ajustarla a la clasificación núm. 6319 con un tipo de 5.75 por ciento en vez de 1.68 por ciento. Esta controversia quedó resuelta satisfactoriamente hasta fines del año fiscal 1936–1937, o sea hasta junio 30 de 1937.

"Al tenerse que renovar la póliza para el año 1937–1938, el Administrador del Fondo del Estado insistió en que el contrato de Miró caía bajo la clasificación núm. 6319, cuyo tipo se había aumentado a 10.51 por ciento. Como el patrono venía obligado a asegurar de acuerdo con los términos del contrato, pagó la prima para el primer semestre, ascendente a $3,678.50, bajo protesta. Aparentemente nunca ha pagado la correspondiente al segundo semestre. El contrato fué terminado en abril de 1938, y el 10 de junio del mismo año el patrono radicó una petición ante la Comisión Industrial de conformidad con la sección 24 de la Ley núm. 45 de 1935 (Leyes de ese año, pág. 251, 303, y siguientes) para que se revisaran la prima y clasificación aplicádasle por el Administrador del Fondo del Estado para el año 1937–1938. En esta petición el patrono levantaba las siguientes cuestiones:

"(1) Que el Administrador del Fondo del Estado cometió error al incluir el contrato del patrono bajo la clave 6319 en vez de bajo la núm. 7520;

"(2) Que el Administrador no tenía autoridad para hacer nuevas clasificaciones después del 1 de mayo de 1937, de acuerdo con la sección 23 de la Ley de Indemnizaciones a Obreros;

"(3) Que el Administrador no podía alterar los términos bajo los cuales se expidió la póliza original, puesto que desde ese momento surgió un contrato que duraba el mismo tiempo que el proyecto del peticionario;

"(4) Que el Administrador abusó de su discreción al aumentar los tipos para la clase de trabajo envuelto en este caso; y

"(5) Que el Administrador cometió error al imponerle al recurrente un nuevo tipo de 10.51 por ciento.

"El abogado del Administrador del Fondo del Estado contestó y más tarde radicó una moción para que se desestimara el recurso basado en que la causa de acción del patrono había prescrito en parte y porque era académico en vista de los incisos 3 y 4 de la sección 24 de la ley. Esta sección lee así:

" '.

"La Comisión Industrial, en una decisión fechada el 16 de diciembre de 1938, se negó a desestimar el recurso por opinar que había una importante cuestión envuelta respecto a si un patrono que asegura por el término de determinada obra no se encuentra en posición distinta, en lo que a las clasificaciones se refiere, a aquel que emplea y asegura obreros regularmente durante una serie de años sucesivos. La Comisión expone los hechos en forma algo distinta a como lo hace el peticionario. Aunque el recurrente dice en su petición que el Administrador, en mayo de 1937, no insistió en su contención de que la obra de Miró había sido clasificada erróneamente bajo la clave núm. 7520 en vez de bajo la núm. 6319, ni en cobrar $5.75 en vez de $1.68 por cada $100 de salarios, la Comisión aparentemente asume que lo cierto era lo contrario, puesto que procede a aprobar el derecho y poder del Administrador a corregir una clasificación efectuada bajo un supuesto error de hecho. Lo que la Comisión encuentra dudoso es si el Administrador, luego de corregir la clasificación en mayo de la clave núm. 7520 a la núm. 6319, *podía,* dos meses más tarde, aumentar la prima para la misma clasificación de $5.75 a $10.75 por lo menos en lo que se refería a obras especiales." 54 D.P.R. 561.

Este tribunal encontrando que no era frívola la duda que había surgido entre los miembros de la Comisión, confirmó su resolución del 16 de diciembre de 1938 y devolvió el caso para ulteriores procedimientos. 54 D.P.R. 561.

"Posteriormente se celebró una vista y la resolución final de la comisión resolviendo definitivamente el caso fué dictada el 31 de agosto de 1939. Ésta leía así:

".

"Esta resolución de la Comisión Industrial estaba suscrita por su Presidente Sr. M. León Parra y por el Comisionado Sr. Juan M. Herrero. El Comisionado Sr. F. Paz Granela disintió. Él fué del criterio de que el Administrador no puede expedir una póliza

que se extienda por un período mayor del año fiscal corriente; que antes de que él expida nuevas pólizas deberá revisar los tipos de primas y aumentarlos o rebajarlos según sea el caso; y que entonces ninguna póliza está en vigor.

"El Fondo del Seguro del Estado solicitó la reconsideración. Ésta fué denegada, mas toda vez que el Fondo no ha interpuesto recurso alguno, no es necesario discutir la cuestión.

"El peticionario también solicitó la reconsideración. También le fué denegada. La contención del peticionario fué que cuando la ley dice 'por cualquier término o parte de un semestre' las palabras 'por cualquier término' son disyuntivas y no significan 'parte de un semestre.' La Comisión creyó que cuando la ley dice 'cualquier término o parte de un semestre' significa copulativamente cualquier 'término o parte' de un semestre y no la interpretación disyuntiva sostenida por el peticionario.

"El peticionario ha acudido en solicitud de un recurso de revisión y señala un solo error, a saber:

" 'La recurrida, Comisión Industrial de Puerto Rico, cometió un grave error de derecho al resolver que habiendo durado el trabajo del recurrente más de seis meses, no es, por esa razón, un patrono temporal u ocasional, y por lo tanto debe ser considerado a los efectos del tipo de prima a pagar por el trabajo que aseguró, como un patrono permanente.' " 56 D.P.R. 127.

Oídas las partes y sometido el recurso, esta corte resolvió, el día 14 de febrero de 1940, en síntesis (*Miró* v. *Comisión*, 56 D.P.R. 127):

1. Que la Ley de Compensaciones por Accidentes del Trabajo (núm. 45 de 1935 (1) pág. 251) contempla dos clases de patronos, el permanente y el ocasional.

2. Que el recurrente era un patrono ocasional.

3. Que cuando el patrono ocasional toma una póliza del Administrador del Fondo del Estado, ésta se entiende hasta el final del período requerido para terminar el trabajo; o sea que la póliza no se le expide por el año fiscal, sino por la duración del trabajo.

4. Que aunque existe la costumbre, por convenirle así más al Administrador del Fondo, de expedir pólizas que tan sólo tienen. vigencia hasta el 30 de junio de cada año, al renovar dicha póliza un patrono ocasional, el administrador no sólo está impedido de aumentar o disminuir los tipos sino de variar sus condiciones originales.

Requerido el Administrador del Fondo por el recurrente Manuel L. Miró para que de acuerdo con lo resuelto por este tribunal procediese a liquidar ". . . su póliza sobre la Obra de Extensión y Mejoras del Acueducto de Ponce al tipo originalmente señalado y fijado, o sea el de $1.68 por cada $100 de jornales pagados, y requiriendo por lo tanto la devolución de $2,388.02 indebidamente cobrados . . . y pagados bajo protesta," el Administrador se negó a cumplir con lo solicitado, . . . y por el contrario pretendió que (el recurrente) pagara al Fondo del Seguro del Estado una suma adicional de $1,054.97, alegando para ello que la resolución dictada por la Comisión Industrial en 16 de diciembre de 1938 resolvió definitivamente en favor del administrador su derecho a cambiar la clasificación de la póliza otorgada al recurrente, y que habiendo él cambiado la clasificación por la núm. 6319, la póliza del recurrente debería ser liquidada a base de $5.75 por cada $100 de jornales.

No conforme Miró, recurrió para ante la Comisión Industrial, la que, por resolución del día 4 de abril de 1940 confirmó al Administrador. Es contra esta resolución que el presente recurso ha sido interpuesto, alegando contra ella el recurrente los siguientes dos errores:

"1. La Comisión Industrial erró al resolver que mediante su resolución de 16 de diciembre de 1938 quedó decidido definitivamente:

"(a) Que el Administrador se había equivocado al darle la clasificación 7520 al trabajo del recurrente.

"(b) Y que habiéndose equivocado al clasificar podía legalmente rectificar, aprobándose por lo tanto su derecho a cambiar la clasificación original núm. 7520 al tipo de 1.68 por cada $100 de nómina, por la clasificación núm. 6319 al tipo de 5.75 por cada $100 de nómina.

"2. La Comisión Industrial erró al interpretar los efectos legales de la opinión emitida por este Hon. Tribunal en 14 de febrero de 1940."

Examinemos el primer error. En cuanto al apartado A opinamos que por tratarse en el mismo de una cuestión

de hecho, este tribunal está impedido por ministerio de la ley que regula estos recursos de revisión, de decidirlo. Ahora, en cuanto al apartado B.

La razón que tuvo la Comisión Industrial para resolver en su mencionada resolución del día 16 de diciembre, 1938, que el Administrador del Fondo del Estado tenía derecho a cambiar la clasificación original núm. 7520 por la núm. 6319, fué, entre otras, la de que existiendo error en el consentimiento prestado por el Administrador con respecto a la sustancia de la cosa, de acuerdo con los artículos 1217 y 1218 del Código Civil, ese consentimiento es nulo, y por ende el contrato no existe.

Dispone el artículo 1217 que será nulo el consentimiento prestado por error, violencia, intimidación o dolo, y el 1218, que para que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo. Aun cuando asumiéramos que el Administrador del Fondo del Estado se equivocó al darle la clasificación núm. 7520 al trabajo del recurrente, y que esa equivocación o error es de los que anulan el consentimiento, siempre nos encontraríamos con que la Comisión se equivocó al concluir que por ello el Administrador tuvo facultades para cambiar la clasificación núm. 7520 por la núm. 6319, ya que de acuerdo con el artículo 1254 del Código Civil, no pueden ejercitar la acción de nulidad ". . . los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error . . ." Dice así el mencionado artículo 1254:

"Pueden ejercitar la acción de nulidad de los contratos los obligados principal o subsidiariamente en virtud de ellos. Las personas capaces no podrán, sin embargo, alegar la incapacidad de aquellos con quienes contrataron; ni los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error, podrán fundar su acción en estos vicios del contrato."

Comentando el artículo 1302 del Código Civil español, que es su equivalente, se expresa así Manresa en sus Comentarios al Código Civil español, vol. 8, pág. 780, 2ª. edición:

"*Irresponsabilidad del defecto alegado.*—Es la segunda de las condiciones necesarias para el ejercicio de la acción. Algunos la expresan diciendo que sólo puede intentar aquélla *el perjudicado;* pero esta expresión puede conducir a ideas equivocadas, ya que la nulidad es independiente de la lesión, como declara el artículo 1300, y es lícito al favorecido económicamente por el contrato pedir la nulidad basándose en causas a él no imputables, y en cambio no autoriza la ley el caso inverso.

"Sencilla la regla contenida en el párrafo segundo de este artículo, puede complicarse cuando coexisten dos defectos del contrato, como puede suceder, derivándose a veces de un mismo hecho, v. gr., el contrato celebrado con un incapaz por quien ignora que lo es: en este ejemplo es indudable que la persona capaz no podrá pedir la nulidad fundado en la incapacidad de la otra, pero sí alegar el error o el dolo que padeciera si las circunstancias del sujeto eran de decisiva influencia en el contrato."

No se trata aquí, pues, de un caso en que no llegó a producirse el consentimiento, sino de uno en que se prestó, aunque con error.

Como no surge de los hechos que el recurrente Miró solicitara la declaración de nulidad del contrato que había llevado a cabo con el Administrador del Fondo del Estado, y como es evidente que de acuerdo con los artículos del Código Civil antes citados el Administrador del Fondo del Estado no puede ejercitar la acción de nulidad por haber sido él el culpable del error, debe resolverse que el contrato estaba en todo su vigor y que por lo tanto la Comisión Industrial erró al decidir que el Administrador tenía facultad para cambiar la clasificación que dió al trabajo que el recurrente iba a realizar.

En vista de lo anterior, se hace innecesario discutir el segundo error señalado, y por tanto *debe revocarse la resolución dictada por la Comisión Industrial de Puerto Rico el día 4 de abril de 1940 en el caso Comisión Industrial 4819 y*

*devolverse éste con instrucciones de que se ordene al Administrador del Fondo del Seguro del Estado que proceda a liquidar el contrato de seguro celebrado con el recurrente al tipo original de $1.68 por cada $100 de nómina, devolviendo en su consecuencia al recurrente la cantidad que éste hubiere pagado de más.*