# United States Court of Appeals
## For the First Circuit

Nos. 08-1533, 08-1739

CITIBANK GLOBAL MARKETS, INC. d/b/a SMITH BARNEY,

Plaintiff, Appellee/Cross-Appellant,

v.

LUIS RODRÍGUEZ SANTANA, Executor of the Estate of Luis Fernández
Ramírez; ELI DÍAZ RODRÍGUEZ, Executor of the Estate of Luis
Fernández Ramírez; ALFER REALTY & DEVELOPMENT CORP.; CENTRAL
PLAZA CORP.; COMMONWEALTH PROMOTERS, INC.; OGIMA INVESTMENTS
CORP.,

Defendants/Third-Party Plaintiffs-Appellants/Cross-Appellees,

v.

JANE DOE-HERNANDEZ; CONJUGAL PARTNERSHIP
DOE-HERNANDEZ; JUAN CARLOS HERNANDEZ,

Third-Party Defendants-Appellees.

[Hon. José Antonio Fusté, U.S. District Judge]
APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Before

Lipez, Hansen,[*] and Howard,
Circuit Judges.

Rubén T. Nigaglioni, with whom Nigaglioni & Ferraiuoli Law
Offices, PSC, was on brief, for defendant, third-party plaintiffs
and appellants/cross-appellees.
Néstor M. Méndez Gómez, with whom Janitza M. García-Marrero
and Pietrantoni Mendez & Alvarez LLP, were on brief, for plaintiff-

---

[*]Of the Eighth Circuit, sitting by designation.

appellee/cross-appellant.

July 17, 2009

**HOWARD**, **Circuit Judge**.  In this appeal from the dismissal of a counterclaim, the appellants ask us to either set aside or reform a settlement agreement between two sophisticated parties because the circumstances of the negotiation carry a whiff of unseemliness, and there has been a suggestion of fraud. Considering all of the facts and circumstances surrounding the negotiation, we conclude that the settlement agreement is binding under Puerto Rico law, and we detect no fraud or absence of disclosure that justify unraveling or disturbing the agreement.

For its part, the victor below -- Smith Barney -- sought attorneys' fees under the Puerto Rico Rules of Civil Procedure and requested, pursuant to federal securities laws, findings regarding the parties' compliance with Rule 11.  Concluding that it would be inconsistent with Puerto Rico law to assess fees for pressing a non-frivolous claim, and also that where the record is clear we need not remand for Rule 11 findings, we deny Smith Barney's cross appeal.

# I. Facts

Sometime in early 2002,[1] Luis Fernandez Ramirez, an attorney, opened numerous brokerage accounts on behalf of himself and several closely-held corporations (referred to herein collectively as "Fernandez, et al.") with CitiBank Global Markets d/b/a Smith Barney.[2] Soon thereafter, Fernandez, et al. became dissatisfied with the brokerage commissions levied on their accounts, and as a result, threatened to move their considerable portfolios elsewhere. Not wanting to lose this business, in June 2003 Smith Barney agreed to a lower commission rate and to credit the difference between the higher commission rate charged to those accounts and seven-eighths of that commission rate. Moreover, Smith Barney proposed an even lower commission rate of ten cents per share for all future transactions. An even lower rate of three cents per share was proffered (and agreed upon) two months later, in August 2003.

---

[1]Because the district court dismissed the appellants' counterclaim under Rule 12(b)(6), our review is de novo and we view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008)(citations omitted). Accordingly, our factual recitation is drawn primarily from the amended counterclaim at issue in this case. See id. at 323.

[2]Appellants in this case are Luis Rodríguez Santana and Eli Diaz Rodríguez, the executors of Fernandez's estate. Closely held corporations owned or managed by Fernandez, viz., Alfer Realty & Development Corp., Central Plaza Corp., Commonwealth Promoters, Inc., and OGIMA Investments Corp., are also appellants in this action.

-4-

It turned out that Smith Barney failed to honor any of these commitments, and actually charged the accounts brokerage commission charges in excess of its normal, published rates. In late 2005 or early 2006, senior managers in Smith Barney's Puerto Rico Office informed Fernandez of certain "irregularities" in the accounts that, according to Smith Barney, resulted in approximately $950,000 in commission overcharges across all of the accounts. Smith Barney offered to pay this amount in order to settle Fernandez's claims of commission overcharges and release it from further liability. Not content to rely on the verbal representations of senior officers at Smith Barney Puerto Rico, Fernandez repeatedly requested the calculations supporting this amount. Although Smith Barney initially resisted providing these calculations, it eventually relented.

On the morning of Friday, February 17, 2006, Smith Barney sent Fernandez the calculations supporting its proposed settlement amount. These calculations involved all eight accounts at issue and were voluminous, totaling forty-four legal-sized pages. Later that day, after Fernandez received the calculations, a representative of Smith Barney arrived with the settlement documents and a notary public in the hope of consummating a settlement with respect to the brokerage commissions.

Fernandez, who only hours earlier had received the working papers from which the settlement figures were derived,

requested several changes to the settlement agreement, and then without reviewing the calculations he had so ardently requested, signed the settlement agreement.[3]  Among other provisions, Fernandez agreed

> [to] release[], forever discharge[] . . . and hold Smith Barney harmless . . . from any and all actions, causes of action, complaints, charges, claims, liabilities, demands, damages, and costs of any kind . . . whether matured or unmatured, fixed or contingent, known or unknown . . . against Smith Barney from the beginning of the world to the date of this agreement by reason, including but not limited to [the securities accounts of Fernandez and the appellants].

In addition to this release, Fernandez further agreed that he "determined that this settlement is fair and reasonable under all the circumstances," that "this determination has been based solely upon his independent judgment," and that in reaching this conclusion he "had adequate opportunity to discuss and assess the merits of all his claims or potential claims with an attorney of his choice."  In addition, Fernandez also agreed that he

---

[3]Fernandez sought and received a representation that stated "Smith Barney represents that the sum accurately reflects the variance between standard commissions and the actual commissions charged to releasor."  This representation was added to the first paragraph of the release.  We are free to consider the settlement agreement and the other documents referenced in the counter claim.  See Coyne v. Cronin, 386 F.3d 280, 283 (1st Cir. 2004) (considering document expressly linked to complaint whose admissibility was not challenged as effectively part of the complaint and available for review on motion to dismiss).

-6-

"cooperated in the drafting and preparation" of the settlement agreement.

A Smith Barney representative executed the agreement on the same day. Over the ensuing weekend, Fernandez reviewed the calculations Smith Barney had provided and realized that the settlement was not calculated on the basis of the lower commission rates of ten cents and three cents per share that were agreed upon in mid-2003. As a result of these and other alleged defects, on Tuesday, February 21 (Monday was a holiday), Fernandez sought to hold the settlement "in abeyance," in the hope of securing richer terms or rescinding the whole agreement.

Smith Barney, however, took the position that the settlement agreement was binding, and was unwilling to revisit the amount of compensation paid to Fernandez.[4] On April 12, 2006, Smith Barney tendered checks to Fernandez totaling $947,128.71. Approximately two weeks later, Smith Barney sent Fernandez an executed copy of the settlement agreement that Fernandez had previously requested.

---

[4]During this time the parties exchanged several letters, and according to the complaint, these letters demonstrate that Smith Barney management was not aware of the advantageous commission rates of ten cents and three cents per share that its predecessors had promised Fernandez. Fernandez believes that this lack of awareness demonstrates either a mutual mistake or consent to settle only claims that Smith Barney charged commission rates in excess of its standard commission rates, leaving for another day the settlement of the dispute regarding the difference between standard commission rates and those promised to Fernandez in mid-2003.

On June 27, 2006, Smith Barney filed a complaint in federal district court seeking, <u>inter alia</u>, a declaration that the settlement agreement was valid, an injunction prohibitng Fernandez, et al. from seeking arbitration, an order for specific performance of the agreement, and damages of $200,000 for appellants' alleged breach of the settlement agreement.

For his part, Fernandez (and his companies) filed a counterclaim asserting various theories under federal and Puerto Rico law. Fernandez later sought leave to amend the counterclaim, which was granted in April, 2007. The amended counterclaim alleged mail and wire fraud, as well as illegal appropriation in violation of the civil provisions of RICO, breach of fiduciary duty and breach of contract in violation of Puerto Rico law, breach of Puerto Rico's Act Against Organized Crime and Money Laundering, P.R. Laws Ann. tit 25, §§ 971 <u>et seq.</u>, and for the first time, a claim of securities fraud, alleging violations of section 10b of the Securities Exchange Act, 15 U.S.C. § 77j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

In October, 2007, the district court granted Smith Barney's motion to dismiss the counterclaim. The district court grounded its decision primarily on the basis that the settlement agreement was valid and binding on the parties, and in the process, rejected the counterclaim brought by Fernandez et al. challenging the validity of the settlement agreement. Having found that the

settlement agreement was valid and binding, see P.R. Laws Ann. tit. 31, § 4828, the district court concluded that with respect to these parties, the agreement had the same effect as res judicata, and therefore Fernandez, et al. could not pursue their counterclaim. See P.R. Laws Ann. tit. 31, § 4827. As a result, the district court did not consider Smith Barney's alternative defenses, including inter alia, defenses based on limitations, failure to plead scienter properly, and failure to meet the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure.

After the district court dismissed the counterclaim, Smith Barney sought attorneys' fees on an equitable theory, which the district court apparently interpreted to be a request for fees pursuant to the Puerto Rico Rules of Civil Procedure, based on Fernandez's alleged obstinate and vexatious challenges to the validity of the settlement agreement and because his pursuit of the counterclaim obstinately and frivolously extended the proceedings.[5] See P.R. R. Civ. P. 44.1(d); see also P.R. Tel. Co., Inc. v. U.S. Phone Mfg Corp., 427 F.3d 21, 33 (1st Cir. 2005). In addition, Smith Barney sought attorneys' fees as a sanction for the defendants' alleged violation of Rule 11, pursuant to the standards for such sanctions under the Private Securities Litigation Reform

[5]On appeal, Smith Barney has not challenged the district court's decision to treat its request for attorneys' fees as a request under Rule 44 of the Puerto Rico Rules of Civil Procedure.

-9-

Act (PSLRA), 15 U.S.C. § 78u-4(c), which requires district courts to make specific findings regarding compliance with Rule 11(b), mandates sanctions where a violation is found, and creates a presumption in favor of awarding attorneys' fees and costs for violations of Rule 11.

The district court denied Smith Barney's motion for attorneys' fees and entered final judgment. The parties' appeal and cross-appeal timely followed.

## II.  Fernandez's Appeal

We review the district court's decision to grant the motion to dismiss de novo, Gray, 544 F.3d at 324, and like the district court, we accept as true all of the appellants' well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. Id. But to survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint must plead facts that raise a right to relief above the speculative level, Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 79 (1st Cir. 2008), such that the entitlement to relief is plausible, Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008). Release is an affirmative defense, see Fed. R. Civ. P. 8(c), and such a defense will support a motion to dismiss only where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude, Gray, 544 F.3d at 324.

We begin with a brief reconnaissance of applicable Puerto Rico substantive law, which we apply in this diversity dispute.[6] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). In Puerto Rico, a "compromise" is a particular species of contract used to resolve disputes involving litigation or the potential for litigation. P.R. Laws Ann. tit. 31, § 4821 ("A compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted."). Where compromises are validly consummated, they bind the parties to the compromise in the same manner as the doctrine of res judicata. P.R. Laws Ann. tit. 31, § 4827. However, compromises procured as the result of error, deceit, violence, or forgery are void. P.R. Laws Ann. tit. 31, §§ 4828, 3404.

With this background, we examine Fernandez's contentions. Though packaged in several legal theories, the primary thrust of Fernandez's complaint is that Smith Barney did not clearly and unambiguously clarify that the approximately $950,000 settlement

---

[6]When a release involves a party's rights under federal law, we employ a totality of the circumstances approach in which we evaluate the knowing and voluntary character of the asserted release. See Cabán Hernández v. Phililp Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007). But because Puerto Rico law applies to this release, we apply state law principles to determine the adequacy of the waiver.

-11-

was not calculated on the basis of the lower commission rates of ten and three cents per share on which he and Smith Barney agreed in mid-2003. According to Fernandez, this lack of clarity was further compounded by the circumstances surrounding his receipt of the working papers and the execution of the settlement agreement. In particular, Fernandez objects that Smith Barney -- only hours after providing the working papers -- sent to his office not only a draft of the settlement agreement, but also an attorney and a notary public with the expectation of executing the settlement that very day.

Under these circumstances, Fernandez contends that Smith Barney's failure to articulate with particularity the scope of the settlement has the effect of invalidating the settlement under Puerto Rico law, or requires a reformation of the settlement such that it excludes his contract-based commission claims. Alternatively, Fernandez argues that the compromise is void because it was procured as the result of "dolo," a form of contractual deceit that may arise from concealment. See Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 44 (1st Cir. 2005).

A. Validity of the Contract

Under Puerto Rico law, a contract has three elements: consent, a definitive (and legal) object, and consideration. See P.R. Laws Ann. tit. 31, § 3391; Quiñones López v. Manzano Pozas, 141 P.R. Dec. 139, 1996 P.R. Eng. 499,244 (1996) (stating that

-12-

three essential conditions of contract validity are consent, a definite object that may be the subject matter of a contract, and consideration).[7]  Fernandez believed that the settlement agreement did not include all of Smith Barney's commission overcharges, in excess of contractually promised rates, and he argues that this mistaken belief is the sort of error that would void his consent. See P.R. Laws Ann. tit. 31, § 3404 (erroneous consent is void). Under Puerto Rico law, however, not all errors entitle one party to invalidate his consent (i.e. make a contract voidable); in order to invalidate consent, an error must "refer to the substance" or the "object of" the contract. P.R. Laws Ann. tit. 31, § 3405.

Moreover, the Puerto Rico Supreme Court has noted the important social interest in holding parties to their contracts, and therefore the "validity of [a] contract and of the consent is presumed," and in order for an error to annul consent, such error must be "excusable." Capó Caballero v. Ramos, 83 P.R. Dec. 650, 83 P.R.R. 625, 648-49 (1961) (emphasis in original). An error is not excusable "when the ignorance of the true state of things is due to negligence or fault of the one who invokes it." Id. at 649. In Capó Caballero, the Puerto Rico Supreme Court applied the "excusable" requirement to find that the defendant Ramos could not

---

[7] The official translations of many Puerto Rico cases cited herein do not contain internal page numbers.  Accordingly, we cannot include pin-point citation references for those cases. See Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 8 n.18 (1st Cir. 2009).

invalidate his consent to a contract to purchase land from Capó Caballero. Id. at 653. Ramos intended to construct a T.V. antenna on a plateau at the top of a hill, which Ramos believed was owned by Capó Caballero. Ramos sent an attorney and an engineer to confirm that the desired location, which had already been identified, was indeed owned by Capó Caballero. Id. at 639. Because it was raining, the engineer did not complete the arduous climb to the top of the hill, but nevertheless informed Ramos that the desired location for the antenna was within Capó Caballero's fenced land. Id. at 639-40. On further review, it became clear that although Capó Caballero's land was high enough to permit construction of an antenna, the steep slope involved would make construction economically prohibitive and that the desired land was actually owned by another. Id. at 651-52. Nevertheless, the Puerto Rico Supreme Court held that any error on the part of Ramos "did not refer to [] facts unknown to the defendant or which he could have found out by exercising some care; it was due to [Ramos's] negligence or fault and was not an excusable error." Id. at 652 (citing Miro v. Industrial Commission, 57 P.R.R. 27, 33 (1940)).[8]

---

[8]Citing to prior decisions from the Spanish Supreme Court, which it treated as persuasive authority, the Puerto Rico Supreme Court also noted that reliance on error to avoid consent is "much less admissible 'whenever those who contract are experts or connoisseurs of the respective business . . . .'" Capó Caballero, 83 P.R.R. at 652 (emphasis in original). Smith Barney notes that Fernandez, and the accounts he controlled, generated "more than

-14-

From this authority Smith Barney argues that if there was any error in Fernandez's consent, it was not excusable and therefore cannot be used to invalidate Fernandez's consent and rescind the settlement, nor can the error support reformation of the settlement to exclude claims based on the contractual ten and three cent per share commission rates. The essence of Smith Barney's argument is that, as Fernandez concedes, he was in possession of the calculations used to derive the settlement amount before he assented to the settlement, and consequently, Fernandez was capable of determining precisely what commission rates were used to calculate the settlement. Thus, Fernandez's failure to discover that the contractual rates of three and ten cents per share were not used to calculate the settlement was not an excusable error that would serve to invalidate Fernandez's consent.

Fernandez does not directly grapple with this authority, and instead relies on another case, Producciones Tommy Muñiz, Inc. v. C.O.P.A.N., 113 P.R. Dec. 517, 13 P.R. Offic. Trans. 664 (1982), to suggest that no contract was formed between himself and Smith Barney. In C.O.P.A.N., the Puerto Rico Supreme Court held that the acceptance of a winning bid did not constitute a valid offer and acceptance (i.e. a contract) because a significant term -- the size

---

2,000" trades over the course of four years. On that basis, Smith Barney urges that Fernandez was an "expert" in the business of securities trading and that we should examine any "error" on Fernandez's part with a particularly searching eye. There is some force to this reasoning.

-15-

and complexity of the "television center" to be furnished in exchange for the exclusive right to broadcast the Pan-American Games -- was indefinite, and course of dealing evidence revealed that the parties subsequently traded seven drafts of a proposed contract. Fernandez argues that the inclusion of contractual commission overcharges in the settlement agreement amounted to essentially a latent ambiguity in a key term, as in C.O.P.A.N., and therefore his acceptance of the settlement agreement should not have created a legally binding contract.

We disagree. Unlike the construction of a television center, which can involve many permutations of equipment quality and quantity, the settlement agreement did not fail for indefiniteness or contain the same level of ambiguity in a key term. The total amount of the settlement was precisely delineated, as were the calculations supporting the settlement. As the court made clear in C.O.P.A.N., it is not necessary for an offer to specify every detail, if such details can be ascertained from other sources, and the parties were clear about them. In the present case, the calculations, whose accuracy is not challenged, were supplied before the settlement was agreed upon, and they served the purpose of ensuring that the offer was definite. Moreover, in view of the Puerto Rico Supreme Court's insistence that errors vitiating consent must be excusable, it would be unfair and inappropriate to permit Fernandez to withdraw his consent from this contract,

-16-

because all of the information necessary to ferret out any erroneous conception or misimpression under which he was operating with respect to the scope of the settlement was already in his possession.

### B. Compromise

Although the settlement agreement was a valid contract between the parties, there exists a further question whether it was a compromise under Puerto Rico law. The Supreme Court of Puerto Rico has identified three elements of a compromise: (i) an uncertain legal relationship, or "conflicting intentions born out of a legally dubious question"; (ii) an intent to eliminate the uncertainty, that is, the parties must intend to substitute "the uncertain relationship for one that is for them certain and uncontrovertable"; and (iii) the parties must make reciprocal concessions. Citibank, N.A. v. Dependable Ins. Co., 121 P.R. Dec. 503, 21 P.R. Offic. Trans. 496, 506 (1988); accord Cabán Hernández, 486 F.3d at 12. See also P.R. Laws Ann. tit. 31, § 4821.

Fernandez does not contest this well-settled proposition. Rather, he asserts that the civil law principle of narrowly construing compromises and waivers of rights precludes the conclusion that, despite its plain terms, the settlement agreement compromised all commission-related disputes between the parties. Thus, he argues that the settlement compromised only the dispute over commission charges in excess of Smith Barney's standard

charges,[9] leaving open any dispute over the difference between Smith Barney's actual charges and the lower commission rates that Smith Barney promised Fernandez.

This contention is misplaced. We are aware of nothing in Puerto Rico law that hinders the most natural reading of the settlement agreement as settling all commission-related disputes between the parties as of the date of the agreement. As we read the authority Fernandez cites, it is in pitch-perfect harmony with our conclusion on this score. It is true that the civil law limits the scope of any compromise to "objects specifically determined therein or which from a necessary inference from its words must be considered as included therein," P.R. Laws Ann. tit. 31, § 4826; see also Succession of Román Febres v. Shelga Corp., 111 P.R. Dec. 782, 11 P.R. Offic. Trans. 988 (1982), and the civil law further cabins a renunciation of rights to "only those [rights] relating to the question with regard to which compromise has been made." Id. Citing to this authority, Fernandez argues that the expansive language of the settlement should be limited to claims for only overcharges over Smith Barney's published rates. Although the

---

[9]We need not dwell on Fernandez's related claim that the settlement agreement lists only him as a "releasor," and consequently, the release should not apply to the corporate appellants. Although it is true that Fernandez is the only "releasor" named in the agreement, the account numbers of the corporate appellants are specifically included in the settlement agreement. Reading those accounts out of the settlement agreement would not be a tenable interpretation of the agreement, under any principle of construction.

civil law would almost certainly restrict the scope of the settlement agreement, Fernandez's proposed interpretation strikes us as dissonant with the general rules of contract construction in Puerto Rico, which remain applicable to compromises. See Román Febres, 11 P.R. Offic. Trans. 988 ("Of course, as far as they are not incompatible with this particular rule of construction, the general rules of interpretation of contracts are applicable . . . .").

Applying Puerto Rico's general rules of contract construction, we conclude, while keeping in mind the policy of construing renunciations of rights narrowly, that the best reading of the settlement agreement is that it settles all of the parties' commission-related disputes. The Puerto Rico Supreme Court has made clear that contracts are "to be construed in good faith," and that contracts should be construed assuming that they were "drawn faithfully and correctly, that is in the understanding that when they were drawn[,] the parties wished to express themselves as normally honest people do, not seeking circumlocutions, deliberate obfuscations or obscurity . . . ." Citibank, 21 P.R. Offic. Trans. at 508 (citing Ex Parte Negron Rivera y Bonilla, 120 P.R. Dec. 61, 20 P.R. Offic. Trans. 63, 77-78 (1987)). Under this standard, in Citibank the Puerto Rico Supreme Court turned aside Citibank's claim that, despite plain language in a stipulation and settlement, certain insurance claims should not have been dismissed

with prejudice because they were not discussed during negotiations and Citibank was under the (mistaken) impression that such claims had been paid or were in the process of being paid.  See id. at 503-04.  The court found persuasive (and not contrary to the civil law) the settlement's plain language that the parties agreed to "settle all the claims accrued or which may accrue from the Policy."  Id. at 508.

Fernandez nevertheless argues that the case sub judice more closely resembles another case, Román Febres, in which the Puerto Rico Supreme Court made clear that a settlement with respect to one case would not be made applicable to other cases that were pending between the same parties, despite potentially broad language in the agreement.  In that case, Román Febres agreed to settle a dispute with Hampton Development Corporation involving the sale of property for development purposes.  The settlement agreement included a term by which Román Febres agreed to

> fully and completely release Hampton [Development Corporation] and its affiliates from any claims or causes of action that could have accrued or may accrue in the future in behalf of the former and against Hampton and its affiliates as a result of relations existing between the parties mentioned up to this day.

Román Febres, 11 P.R. Offic. Trans. 988. Relying on this language, Hampton argued that the settlement agreement encompassed three suits filed by Román Febres seeking damages arising from three

-20-

separate and unrelated construction contracts. The Puerto Rico Supreme Court began its analysis by noting that nothing in P.R. Laws Ann. tit. 31, § 4827 constrains the court's ability to interpret the scope and application of a compromise. Id. The court went on to conclude that the settlement agreement, despite the broad language cited above, should not be read to include the three suits at issue, which sought recovery for materials supplied and work previously performed in unrelated contracts. Id. The court grounded its decision on three related bases: first, the court noted that the broadly drafted settlement was ambiguous, particularly with respect to the phrase "mentioned." Next, the court noted that if the parties to the release wished to extinguish then-filed and pending suits, "it would be logical to think that they would have said so specifically and not as part of a general and indeterminate release," which the court concluded was an "accessory" to the main compromise settling the real estate dispute. Id. Finally, the court relied on the civil law notion that compromises should be narrowly construed to reinforce its independent reading of the settlement agreement as not reaching the other suits. Id.

Fernandez argues that the dispute regarding his contractually-based fee claims are like the unrelated suits that the court found in Román Febres were not included in the parties' broadly worded settlement agreement. In support of his contention,

Fernandez argues that, at the time Smith Barney drafted the settlement agreement, it was not aware of the contractual commission fees of ten and three cents per share that it had (allegedly) agreed to in mid-2003. Further, Fernandez argues that the settlement agreement makes clear that by the settlement agreement's plain terms, the approximately $950,000 provided for in the agreement only "reflects the variance between standard commissions and the actual commissions charged."

Recognizing that this case does not fit comfortably within the paradigm of either Citibank or Román Febres, we conclude that Smith Barney's proposed reading of the settlement agreement is the better one. Smith Barney argues that the parties wished to settle at a minimum all of their commission-related disputes, and that the settlement agreement should be read to effectuate its purpose of "resolv[ing] all pending claims and differences [between Smith Barney and Fernandez]."

It is true that the release was not arrived at with the lengthy drafting history or the specific terms described in Citibank, see 21 P.R. Offic. Trans. at 502-03, (describing settlement and its terms with respect to several causes of action); see also id. at 506-07 (stating that Citbibank negotiated settlement of ongoing controversy and that Citibank's counsel signed settlement after review to resolve "all doubts surrounding the items and sums involved"). Nevertheless, Smith Barney

-22-

furnished Fernandez with all calculations necessary to determine an acceptable settlement of the commission-related disputes, and after an opportunity to review these calculations and the agreement itself, Fernandez agreed to the proposed settlement. And unlike Román Febres, the claim that Fernandez wishes to exclude from the settlement arises from the same common nucleus of operative fact: Smith Barney's levying of excessive commissions charges, which were the impetus for the compromise at issue. Accordingly, we see no reason to refrain from enforcing the plain, if broad, terms of the agreement. This case just does not encompass the same level of ambiguity present in Román Febres, and the compromise should be enforced.[10] Accord Cabán Hernández, 486 F.3d at 12 (noting that release was intended to eliminate all uncertainty surrounding plaintiffs' termination).

---

[10]Fernandez presses another related reason for finding that the settlement agreement should not reach his contractual commission claims: the consideration of roughly $950,000 was so lacking as to provide another interpretive thumb on the scale in favor of his construction of the settlement agreement. See Román Febres, 11 P.R. Offic. Trans. at n.6 (noting that commentators suggest "in cases of onerous contracts, doubts should be decided in favor of the greater reciprocity of interests"). The Puerto Rico Supreme Court has made clear that reciprocal concessions involved in a compromise do not have to be equivalent. Citibank, 21 P.R. Offic. Trans. at 507. Here, Smith Barney abandoned several potential defenses to liability, including ratification and limitations-based defenses, and agreed to pay a significant sum to settle the matter. Although Fernandez may have been entitled to more, perhaps even several hundred percent more had he chosen to litigate and then secured a favorable verdict, given the implausibility of his reading of the settlement agreement, the substantial consideration principle, if it is even applicable, does not alter our reading of the compromise.

## C. Dolus/Dolo

Notwithstanding our conclusion that the compromise between Fernandez and Smith Barney was valid and reaches all commission-related disputes, Fernandez argues that the presence of contractual deceit (dolus or dolo) nevertheless requires invalidation of the contract. Dolus or dolo is a form of contractual deceit that can serve to invalidate consent to an otherwise valid contract or compromise. See P.R. Laws Ann. tit. 31, § 4828 (providing that a compromise in which "error, deceit, violence or forgery of documents is involved, shall be subject to section 3404 of this title"). In turn, section 3404 provides that "consent given by error, under violence, by intimidation or deceit shall be void." P.R. Laws Ann. tit. 31, § 3404. Nevertheless, the Puerto Rico Supreme Court has made clear that good faith on the part of contracting parties is "always presumed," and one seeking to rely on dolo to invalidate a contract must rebut the presumption of good faith with evidence of intentional fault or bad faith. Citibank, 21 P.R. Offic. Trans. at 512 (citing Canales v. Pan Am., 112 P.R. Dec. 329, 12 P.R. Offic. Trans. 411 (1982)); accord Cabán Hernández, 486 F.3d at 12. Moreover, in determining whether to permit invalidation of a contract on the basis of dolo, Puerto Rico courts place considerable weight on the education, social background, economic status, and business experience of the party seeking to avoid the contract. Cabán Hernández, 486 F.3d at 12

(citing Miranda Soto v. Mena Ero, 109 P.R. Dec. 473, 9 P.R. Offic. Trans. 628, 634 (1980)). Applying these factors, we have declined to invalidate English-language releases signed by individuals, two of whom lacked fluency in English, and all of whom were educated at slightly beyond the high school level. Cabán Hernández, 486 F.3d at 9, 12. In the present case, of course, the party seeking to invalidate the contract was a wealthy and accomplished attorney experienced enough to have a portfolio that generated in excess of a million dollars in brokerage commissions. Fernandez's sophistication, coupled with his failure to allege sufficient, colorable bad faith on the part of Smith Barney, defeats any claimed dolo in this case.

Recognizing this possibility, Fernandez maintains that the Puerto Rico Supreme Court has been expanding the law of dolo, and that it is increasingly viewing failures to speak during contract negotiations with a jaundiced eye, even when the party seeking to avoid a contract is sophisticated. In support of this proposition, Fernandez cites Ortiz Burnett v. El Mundo Broad. Corp., in which an equally divided Puerto Rico Supreme Court upheld a lower court's decision permitting a trial on the question of whether a party to lease negotiations had a duty to disclose to his commercially sophisticated counterparty a pre-existing agreement to sub-lease his space to third parties at a (possibly substantial) profit. 2006 T.S.P.R. 154, 2006 WL 3055516 (P.R. Oct. 18, 2006).

-25-

It is not clear to us that either this case or <u>Banco Popular</u> v. <u>Succession Talavera</u>, 2008 T.S.P.R. 132, 2008 WL 3834118 (P.R. July 31, 2008), another case cited by Fernandez in support of his dolo argument, suggest a contrary outcome. In any event, English translations of these cases are not available in the bound volumes of the court's reporter, and Fernandez has not provided us with certified translations of these cases, as required our rules. <u>See</u> 1st Cir. Loc. R. 30(d). Consequently, these cases may not be used to support Fernandez's argument with respect to dolo. <u>Lopez-Gonzalez</u> v. <u>Municipality of Comerio</u>, 404 F.3d 548, 553 n.4 (1st Cir. 2005).

Having determined that the counterclaim does not adequately raise a claim that the settlement was infected with dolo, we need not consider whether Article 1055 of the Puerto Rico Civil Code requires that the settlement agreement be set aside. Similarly, because we conclude that the district court correctly determined that the settlement agreement was a valid compromise reaching all commission-related claims between the parties we need not reach the question of whether the settlement agreement was a novation.

Finally, we turn to Fernandez's argument based on agency law (mandato) principles. Fernandez argues that under general principles of agency law, Smith Barney was required to provide an accounting of its commission overcharges in order for any release

-26-

to be valid.  He further argues that the accounting of overcharges that Smith Barney prepared for his review was insufficient to satisfy its obligations under agency principles and their attendant fiduciary duties.  Assuming <u>arguendo</u> that Smith Barney was required to render an accounting,[11] the detailed forty-plus page analysis of the overcharges satisfied Smith Barney's obligations on that score. Smith Barney's accounting detailed all transactions, commissions charged, and the amount of commission that Smith Barney believed should have been charged.  We discern nothing in Puerto Rico agency law requiring anything more; if Fernandez believed he should have been charged a different commission, it was incumbent on him to engage in further negotiations.

We have reviewed the remainder of Fernandez's contentions and find them without merit, and therefore affirm the district court's dismissal of Fernandez's counterclaim on the basis of release.

### III.  Smith Barney's Cross-Appeal

In its cross-appeal, Smith Barney seeks attorneys' fees under the Puerto Rico Rules of Civil Procedure, as well as a remand to the district court for specific findings regarding compliance

---

[11]Since the agency relationship was predicated on the purchase and sale of securities, Smith Barney argues that the Uniform Securities Act, and not the general agency principles of the Puerto Rico Civil Code, governs this relationship.  In view of our conclusion regarding the disclosure, however, we need not reach this issue.

with Rule 11 of the Federal Rules of Civil Procedure, as required by the PSLRA, 15 U.S.C. § 78u-4(c).

A.  Attorneys' Fees Under Puerto Rico Law

Puerto Rico law governs the state law claim for attorneys' fees in this diversity action.  See Mass. Eye & Ear Infirmary v. QLT Phototherapuetics, Inc., 552 F.3d 47, 74 (1st Cir. 2009); Newell P.R. Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir. 1994).  Puerto Rico law provides that in the event that any party or its lawyer acted obstinately or frivolously, the court shall impose on such person the payment of a sum of attorneys' fees, which, in its judgment the court corresponds to such conduct.  P.R. Tel. Co., 427 F.3d at 33 (quoting P.R. R. Civ. P. 44.1(d)).  It has long been understood that "a finding of obstinacy requires that the court determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay."  P.R. Tel. Co., 427 F.3d at 33 (quoting De Leon Lopez v. Corp. Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991)).

Reviewing Smith Barney's claims of obstinance and frivolousness, the district court found none.[12]  This finding is due

_____

[12]In its filing requesting fees in the district court, Smith Barney argued that Fernandez's failure to accept the terms of a settlement that he felt was invalid and contrary to Puerto Rico law was vexatious, as was Fernandez's attempt to obtain an adjudication of his counterclaim, in which he raised these challenges.  Smith

significant deference.  Mass. Eye & Ear Infirmary, 552 F.3d at 74 (citing French v. Corporate Receivables, Inc., 489 F.3d 402, 403 (1st Cir. 2007)); see also De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 199 (1st Cir. 2009); B. Fernandez & HNOS v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008).  It is true that the district court did not delve deeply into the reasons why it concluded that Fernandez's prosecution of his suit was neither obstinate nor frivolous, but our precedents do not always require an exacting level of detail.  See Mass. Eye & Ear Infirmary, 552 F.3d at 74 (explaining in context of federal fee shifting statute that district court's attorneys' fees finding need not be "precise to the point of pedantry," "infinitely precise," "deluged with details, or even fully articulated")(citing United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 42 (1st Cir. 2008))) (emphasis added).  Here, although further explanation by the

---

Barney adds that Fernandez's motion for limited discovery, including a request to perpetuate testimony in view of his ailing health -- motions that the district court largely granted -- were also vexatious and/or obstinate.  In short, Smith Barney argues that Fernandez's challenge to the settlement agreement, rather than his almost certainly overreaching counterclaim, is the source of the vexatiousness.  Crediting this argument would have the effect of penalizing Fernandez for losing a case that was not obviously frivolous, and applying Puerto Rico law, we have long declined to do so.  E.g., Dopp v. Pritzker, 38 F.3d 1239, 1254 (1st Cir. 1994) ("Indeed, even if a party's claim ultimately fails, it cannot be deemed frivolous or obstinate for that reason alone.") (quoting Navarro de Cosme v. Hosp. Paria, 922 F.2d 926, 934 (1st Cir. 1991)).

district court would have been preferable, we cannot conclude that the district court's denial of fees was an abuse of discretion.[13]

### B.   Findings Under the PSLRA

The final question we must resolve is one of first impression in this circuit: whether the district court is required to make findings regarding compliance with Rule 11(b) of the Federal Rules of Civil Procedure, in a case in which a claim was made under the securities laws but where all claims were dismissed on state law grounds.  The statute requiring such findings does not appear to brook any exceptions, see 15 U.S.C. § 78u-4(c)(1) (requiring such findings as to any complaint, responsive pleading or, dispositive motion in any "private action" raising a claim under the securities laws), and at least one other circuit has reached that conclusion.  See Morris v. Wachovia Sec., Inc., 448 F.3d 268, 276 (4th Cir. 2006) ("[T]he Rule 11(b) inquiry is mandatory even if other claims in the action arise under other laws.").  Moreover, the purpose of the PSLRA similarly supports requiring district courts to undertake a Rule 11 inquiry at the conclusion of any private securities fraud action.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81-82

---

[13]In view of the complexity of Puerto Rico law with respect to compromises, and the apparently evolving nature of dolo, from our own review of the record we would be hesitant to conclude that appellants' actions in prosecuting this suit, even in view of their lack of success, were obstinate or frivolous enough to warrant the award of fees. See supra note 13.

(noting that Title I of the PSLRA represents "Congress' effort to curb . . . perceived abuses," by "mandat[ing] imposition of sanctions for frivolous litigation").

Whether or not a Rule 11(b) inquiry must be made into Fernandez's counterclaim, we needn't remand this case to the district court for that purpose. As noted, the PSLRA requires courts, upon final adjudication of an action, to make findings regarding parties' compliance with Rule 11(b) in private securities matters, and although it does not alter the standards used to judge compliance with Rule 11, see Dellastatious v. Williams, 242 F.3d 191, 197 n.5 (4th Cir. 2001); Simon DeBartolo Group, L.P. v. Richard E. Jones Group, Inc., 186 F.3d 157, 167 (2d Cir. 1999), the PSLRA does change the consequences for a Rule 11 violation. Specifically, if a court concludes that Rule 11 has been violated, the PSLRA provides that "the court shall impose sanctions" on the offender. 15 U.S.C. §78u-4(c)(2); Morris, 448 F.3d at 276 (noting that statute's use of the word "shall" creates an obligation "impervious to judicial discretion," and requires the district court to impose sanctions for every violation).

Rule 11(b) proscribes not only written arguments made with "any improper purpose," but also advancing "frivolous" arguments, as well as the assertion of factual allegations without "evidentiary support" or the "likely" prospect of such support. Fed. R. Civ. P. 11(b); Young v. City of Providence ex rel.

-31-

<u>Napolitano</u>, 404 F.3d 33, 39 (1st Cir. 2005). We have said, however, that Rule 11(b) is not a strict liability provision, <u>Young</u>, 404 F.3d at 39, and a showing of at least "culpable careless[ness]" is required before a violation of the Rule can be found, <u>Roger Edwards LLC</u> v. <u>Fiddes & Son, Ltd.</u>, 437 F.3d 140, 142 (1st Cir. 2006). We have also been careful to make clear that "[t]he mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition or Rule 11 sanctions." <u>Protective Life Ins. Co.</u> v. <u>Dignity Viatical Settlement Partners, L.P.</u>, 171 F.3d 52, 58 (1st Cir. 1999).[14]

With these standards in mind, we conclude that no purpose would be served by remanding this case to the district court for Rule 11 findings. Although some courts have remanded cases in which the district court failed to make Rule 11 findings, <u>see</u> <u>Rombach</u> v. <u>Chang</u>, 355 F.3d 164, 178 (2d Cir. 2004), in this case we see no reason to do so. The district court has already denied Smith Barney any attorneys' fees under a standard similar to Rule 11(b), and our review of the record does not suggest that Fernandez's claims were brought for an improper purpose, rose to

---

[14]Another circuit has said in evaluating writings for compliance with Rule 11: in order to violate Rule 11, a legal argument must "'have absolutely no chance of success under the existing precedent' to contravene the Rule." <u>Morris</u>, 448 F.3d at 277 (citing <u>Hunter</u> v. <u>Earthgrains Co. Bakery</u>, 281 F.3d 144, 153 (4th Cir. 2002). Similarly factual allegations will run afoul of Rule 11 when they are "unsupported by <u>any</u> information obtained prior to filing." <u>Morris</u>, 448 F.3d at 277 (citing <u>Brubaker</u> v. <u>City of Richmond</u>, 943 F.2d 1363, 1373 (4th Cir. 1991)).

the level of being frivolous, or made unsupportable factual allegations. Other circuits have noted that a remand for a Rule 11 determination is not necessary if the record provides no basis for awarding sanctions. <u>See</u> <u>Dellastatious</u>, 242 F.3d at 197 n.5. Because our review of the record reveals no basis for finding a Rule 11 violation, we decline to remand this case to the district court.

## IV. Conclusion

For the reasons stated above, the district court's dismissal of Fernandez's counterclaim is <u>affirmed</u>, and the district court's decision to deny attorneys' fees under the Puerto Rico Rules of Civil Procedure is also <u>affirmed</u>. In addition, we decline to remand this case for further proceedings to determine whether any Rule 11 violation occurred in this case because we are satisfied that no such transgression has occurred. Each side shall bear its own costs.

**It is so ordered**.